IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Darren Cole, <br><br> Plaintiff, <br> v. <br><br> The City of Chicago, <br><br> Defendant. | No. <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

1. Since 2006, the Chicago Police Department ("CPD") has continually abused and harassed Plaintiff, Mr. Darren Cole, by subjecting him to over sixty unconstitutional detentions during which its officers have threatened him with their guns; verbally and physically assaulted him and at times detained him for many hours. CPD continually targets Mr. Cole because he shares the same name and birthdate as an individual with an outstanding warrant. On multiple occasions, Mr. Cole has pleaded with CPD officials to correct their records to reflect that he is not the Darren Cole with the outstanding warrant. CPD and City officials have ignored Mr. Cole's pleas and further ignored his counsel's efforts to resolve this matter without resorting to litigation. The abuse and harassment Mr. Cole experiences at the hands of CPD has had a devastating impact on his personal and professional life and has instilled in him a fear of being harassed whenever he leaves his home—a fear that has only grown during the COVID-19 pandemic. This action is brought pursuant to 42 U.S.C. §1983 to redress the deprivation under color of law of Mr. Cole's rights as secured by the Fourth Amendment to the United States Constitution. This Court's intervention is urgently required to prevent CPD's unlawful harassment of Mr. Cole.

## JURISDICTION & VENUE

2. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a).

3. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims asserted in this complaint occurred in this judicial district.

## PARTIES

4. Plaintiff Darren Cole is a 50-year-old Black resident of Chicago, Illinois. He was a resident of Chicago during all of the events mentioned in this complaint.

5. Defendant City of Chicago is and at all times mentioned herein was a municipality organized and operating under the statutes of the State of Illinois to maintain the CPD, which acts as the City's agent in the areas of municipal law enforcement, and for which the City is ultimately responsible.

## FACTUAL BACKGROUND

6. Since 2006, CPD officers have unconstitutionally detained Mr. Cole approximately sixty times. Though the manner of detention varies—sometimes police threaten Mr. Cole with violence, sometimes they do not; sometimes police take him to a police station, sometimes they do not; sometimes police steal his possessions, sometimes they do not—the common thread is that Mr. Cole is unconstitutionally detained pursuant to a warrant for an entirely different individual who happens to have a similar name and driver's license number, one Darren *H.* Cole. (Emphasis added.)

7. On approximately ten of these occasions, police have additionally transported Mr. Cole to Chicago police stations, typically on the west side and most often the 11th District station.

8. CPD officers unconstitutionally detained Plaintiff for the first time in or about the Spring of 2006 while he was driving east on W. Jackson Blvd. near S. Washtenaw Ave. in Chicago, IL. CPD officers pulled him over and subsequently told him that there was a warrant out for his arrest. They held him for four hours before ultimately releasing him.

9. The morning after this first detention, Mr. Cole traveled to 11th District police station at W. Harrison St. and S. Kedzie Ave. to clear up any inaccurate information that may have led to the stop. He explained to the two CPD officers sitting behind the front desk that he was pulled over and detained regarding a warrant that was not for him and asked how to prevent a future reoccurrence. The officers told him that there was "nothing that they could do" and advised him to always travel with his driver's license, car insurance, and social security card to prove his identity.

10. In or about September 2006, CPD officers pulled over Mr. Cole near the intersection of W. 68th St. and S. Peoria St. in Chicago, IL. CPD officers handcuffed Mr. Cole and told him that there was a warrant out for his arrest. They questioned him for approximately one hour before eventually releasing him.

11. Approximately two months later, CPD officers again pulled over Mr. Cole near the intersection of W. 68th St. and S. Peoria St. in Chicago, IL. A while male officer with a mustache approached Mr. Cole's vehicle with his gun drawn and pointed at Mr. Cole. The officer ordered Mr. Cole out of his vehicle, handcuffed him, guided him to the rear of the vehicle, and forced him to lay his face down on the trunk. The officer then pointed his gun at Mr. Cole and ordered him to walk towards the police vehicle. He told Mr. Cole that "if you fucking move I'll shoot you," and then demanded that Mr. Cole lay down on the ground. Mr. Cole was forced to lay face first in snow. Eventually, the officers who had detained Mr. Cole in September

2006 arrived on the scene and informed the officer holding Mr. Cole that he was not the subject of the warrant. Mr. Cole was released after being detained for several hours.

12. Over the course of the next ten years, CPD officers repeatedly pulled over and detained Mr. Cole under the false belief that there was a warrant out for his arrest. During these detentions officers would often handcuff Mr. Cole and would usually hold him for two to four hours before releasing him.

13. At approximately 5:00 PM on a summer evening in or about 2016 or 2017, CPD officers pulled over Mr. Cole near the intersection of W. 5th Ave. and S. Albany Ave. in Chicago, IL. The female officer who pulled him over informed him that he had turned without using his turning signal. When backup CPD officers arrived, they notified Mr. Cole that there was a warrant out for his arrest. When Mr. Cole attempted to explain that he was not the subject of the warrant, a male Latinx officer punched him in the mouth. After CPD officers detained him for several hours, Mr. Cole was released.

14. In or about 2017, CPD officers pulled over Mr. Cole near the intersection of S. Western Ave. and W. Harrison St. in Chicago, IL while he was transporting a friend, who had been in a motorcycle accident, to the hospital. Two officers, one Black and one white, approached Mr. Cole and informed him that there was a warrant out for his arrest. Mr. Cole attempted to explain that he was not the subject of the warrant, and the Black officer suggested that they let him go. The white officer insisted that they detain Mr. Cole and called for backup. When the backup officers arrived, one threatened to tase Mr. Cole. Officers then handcuffed Mr. Cole and brought him to the 11th District police station, where he was held for several hours before being released. Mr. Cole's injured friend drove Mr. Cole's car away from the scene.

15. Around Summer of 2018, CPD officers pulled over Mr. Cole near the intersection of W. Keystone St. and N. Thomas Ave. in Chicago, IL. The CPD officers ordered Mr. Cole out of his vehicle and placed him in handcuffs. One officer led Mr. Cole to the front of his vehicle and slammed Mr. Cole's face on the hood, yelling at Mr. Cole. The officers detained Mr. Cole on the street for approximately three hours, thoroughly searching his vehicle before ultimately releasing him.

16. On or about the afternoon of April 1, 2019, CPD officers pulled over Mr. Cole near W. Gladys Ave. and S. Laramie Ave. in Chicago, IL. Officers approached his vehicle with guns drawn, and Mr. Cole provided the officers with some documentation he had accumulated over the years to show his innocence—letters from CPD Sergeant Osborne and Marion County Sheriff DeVore indicating that he was not the proper subject of the warrant, discussed below. Police continued to hold him at gunpoint and eventually informed him that his license plate was flagged as belonging to a person with an outstanding warrant. Police eventually released him, saying, "hey, you need to do something about your license plates. I'm sorry."

17. Several days after this stop, Mr. Cole took remedial steps as suggested: on or about April 3, 2019, Mr. Cole travelled to the Department of Motor Vehicles ("DMV") Office at S. Laramie Ave. and W. Harrison St. in Chicago, IL. While speaking with a supervisor, Mr. Cole called Chicago police in a proactive effort to bring parties he thought might help him into the same space. The responding officer was one of the same officers who had pulled him over days earlier. The officer and Mr. Cole spoke with the DMV supervisors, and contacted a DMV office in Springfield, Illinois; at this time, the officer said "somebody's got to do something about that license plate" and DMV personnel told the group "that's not him" and "y'all shouldn't be

locking him up." Eventually, the group recommended that Mr. Cole travel to the Illinois State Police office in Villa Park.

18. Later that same day, Mr. Cole travelled to the Illinois State Police ("ISP") Office in Villa Park, Illinois. Mr. Cole called Villa Park for police assistance prior to entry in a proactive effort to prevent any confusion about his identity that could lead to another unconstitutional detention. A Villa Park police officer arrived and, upon request, ran Mr. Cole's license plate. Mr. Cole and the officer pulled into the ISP parking lot, where an ISP supervisor came and met them to inquire what was going on. Mr. Cole was informed by personnel there that the problem regarding the mistaken warrant was the responsibility of Defendant City of Chicago, and officers recommended that he retain a lawyer.

19. In approximately November 2019, CPD officers pulled over and wrongfully detained Mr. Cole on the west side of Chicago, IL near the intersection of N. Western Ave. and W. Lake St.

20. Mr. Cole again provided the officers with the documentation he had accumulated over the years to show his innocence—letters from CPD Sergeant Osborne and Marion County Sheriff DeVore indicating that he was not the proper subject of the warrant, discussed below—but the officers still detained him, handcuffing him so tightly that his hands went numb and his shoulders felt as if they were being pulled from their sockets

21. The CPD officers, upon information and belief operating out of CPD's 11th District station, called for backup despite being provided with Mr. Cole's documentation. Three additional squad cars arrived.

22. On December 7, 2020, Chicago Police Officer Wrightfeld (Star # 4925) detained Mr. Cole for a malfunctioning brake light at N. Mayfield Ave. and W. Corcoran Pl. in Chicago,

IL. During the stop, Mr. Cole called one of his lawyers who spoke with Officer Wrightfeld regarding the warrant, and Officer Wrightfeld released Mr. Cole.

23. The specific incidents alleged above are not exhaustive. In addition to those incidents, Mr. Cole has been unconstitutionally stopped and detained in a similar manner by CPD officers on additional occasions.

24. Upon information and belief, none of the many CPD officers and CPD supervisors who have stopped Mr. Cole and discovered his mistaken identity took any meaningful steps to correct CPD records and recordkeeping to prevent future wrongful seizures.

### Mr. Cole has Made Repeated Efforts to Correct the Situation

25. Over the years, Mr. Cole has taken every remedial action he could think of to attempt to live his life free from constant encumbrance as a result of police actions and inactions concerning the outstanding warrant for Darren H. Cole.

26. In or about 2008 Mr. Cole travelled to CPD headquarters at E. 35th St. and S. Michigan Ave. in Chicago, IL. At CPD headquarters, Mr. Cole was informed that he and the holder of the warrant, Darren H. Cole, shared a birthday and a nearly identical driver's license number. Mr. Cole requested to be fingerprinted to prove that he was not Darren H. Cole, and was fingerprinted, but no action was taken beyond his being told to carry his identification and social security card at all times. Police also recommended that he go to 26th St. and California Ave. to speak with representatives from the Sheriff's Department. Upon his arrival there, the Cook County Sheriff's Department called the Marion County Sheriff's Department, which indicated that Mr. Cole should not be arrested on this warrant and indicated that responsibility fell on CPD to correct the situation. On Mr. Cole's next shift at work, however, Cook County Sheriffs

appeared at his job with a warrant for his arrest. Mr. Cole was transported from his workplace to the 16th District police station, detained for six hours, and then released.

27. Mr. Cole engaged the help of a law firm in 2014, through whose efforts he was able to obtain a letter on official letterhead from the then-Sheriff of Marion County, Jerry DeVore, indicating that Mr. Cole was *not* the Darren H. Cole who possessed an outstanding warrant and should therefore not be detained on this warrant. Marion County Letter, attached to and incorporated in this Complaint as **Exhibit A.** Mr. Cole carries this letter with him at all times, and has shown it to CPD officers on multiple occasions in an attempt to avert lengthy detention and harassment, but officers generally ignore this letter.

28. Mr. Cole also visited the 11th District police station in 2018 to attempt to clear up the matter. At that time, he obtained a handwritten note from Sergeant Osborne (Star # 1316) indicating that warrant W04W2579 was not for Mr. Cole and providing Sergeant Osborne's personal contact information for reference use by CPD officers in the event of a mistaken stop. Letter from Sgt. Osborne, attached to and incorporated in this Complaint as **Exhibit B.** As described above, however, CPD officers have continued to stop and detain Mr. Cole on the incorrect warrant, generally ignoring this note.

**The Chicago Police Department's Failure to Remedy Harassment Against Darren Cole Constitutes a Pattern or Practice of Deliberate Indifference**

29. Mr. Cole has been subjected to approximately 60 unconstitutional detentions since approximately 2006. During these incidents he has frequently been held upwards of four to six hours while the CPD verifies that the warrant on which he was detained was not his own.

30. Mr. Cole has been fingerprinted by the CPD multiple times during these unconstitutional detentions.

31. Mr. Cole has never been charged with any offense as a result of these unconstitutional detentions.

32. CPD officers and supervisors have demonstrated that they know Mr. Cole has been repeatedly harassed with unconstitutional detentions. Multiple CPD officers and supervisors from west side police stations, particularly, upon information and belief, in the 11th District, have recognized Mr. Cole during incidents of unconstitutional detention and have on several occasions told other CPD officers that "he's not the guy" or "the warrant's not for him."

33. Upon information and belief, after each detention, CPD officers generated documents including contact cards, arrest reports, and activity reports that described Mr. Cole's mistaken identity. Each of these documents were reviewed by supervisors who took no action to prevent future arrests.

34. A high-ranking CPD officer was made aware of Mr. Cole being mistaken for Darren H. Cole and unconstitutionally detained, and the only step that he took was to provide Mr. Cole with a short handwritten note, advising him to present the note to CPD officers when he is stopped, instead of taking steps to ensure that Mr. Cole is no longer unlawfully stopped. *See* Exhibit B. Mr. Cole has produced this note for CPD officers during subsequent incidents, but he has continued to be unconstitutionally detained.

35. The CPD's failure to take any real steps to remedy Mr. Cole's ongoing harassment despite clear knowledge that he is not the subject of any active warrants violates Mr. Cole's Fourth Amendment right against unlawful seizure.

36. CPD's primary tool for managing information is the CLEAR system. CLEAR is a large information database that allows officers "to complete reports such as Tactical Response

Reports and Investigatory Stop Reports, as well as search for completed reports."[1] CLEAR contains information from many distinct "applications," including "Investigative Alerts, Sex Offenders, Cases, Adults and Juvenile Arrests, Search Warrants, Illinois Department of Corrections Records, Adult and Juvenile Warrants, Traffic Stops, Tactical Response, Contact Cards, Missing Persons, and Inventories."[2] All information entered into CLEAR is automatically saved to CPD's data warehouse.[3]

37. CPD has failed to use its data collection and management systems, including CLEAR, in a manner that ensures that accurate records are maintained to protect the constitutional rights of Chicago residents. CPD has been on notice that these systems are deficient. For example:

    a. The Department of Justice's investigation of CPD and subsequent report revealed that the deficiencies within CPD's information management systems "contribute to the Department's failure to identify and correct unconstitutional policing."[4] Within CLEAR, there are "several discrete, disconnected modules," and information is generally not accessible across modules.[5] As a result, "information is siloed, inaccurate, and incomplete . . . . supervisors are not able to properly review activity, [and] command staff are not able to properly discern patterns and

---

[1] City of Chicago Office of Inspector General, *Review of the Chicago Police Department's "Gang Database"* 19 (April 2019), https://igchicago.org/wp-content/uploads/2019/04/OIG-CPD-Gang-Database-Review.pdf
[2] *Id.*
[3] *Id*.
[4] United States Department of Justice Civil Rights Division & United States Attorney's Office Northern District of Illinois, *Investigation of the Chicago Police Department* 124 (Jan. 2017), https://www.justice.gov/opa/file/925846/download.
[5] *Id*.

deficiencies."[6] Due to these deficiencies, "personnel within CPD often lack access to the data that would help them perform their duties."[7]

b. The Police Accountability Task Force ("PATF") Report reached the same conclusions. The PATF Report found that CPD's technology systems were "[o]utdated, inadequate, and fragmented," and found that CLEAR specifically offers "limited functionality."[8]

c. The City of Chicago Office of the Inspector General conducted a review of CPD's Gang Database ("OIG Report"), which revealed similar deficiencies.[9] The OIG Report explains that "CPD's gang information contains incomplete and contradictory data."[10] One of the OIG Report's primary findings is that "CPD's gang arrest cards raise significant data quality concerns," as those cards were often found to contain inaccurate information. While the OIG Report was limited to findings related to the Gang Database, it offers further evidence that CPD's data management practices are flawed, and that CPD has been on notice of those deficiencies.[11]

**The Harms to Mr. Cole Are Significant**

38. Mr. Cole's injuries are significant. His liberty has been restrained on numerous occasions during the course of wrongful detentions, and he was held at gunpoint by CPD officers during the course of one of these wrongful detentions.

---

[6] *Id*.
[7] *Id*. at 125.
[8] Police Accountability Task Force, *Recommendations for Reform: Restoring Trust Between the Chicago Police and the Communities They Serve* 79, 80 (April 2016), https://chicagopatf.org/wp-content/uploads/2016/04/PATF_Final_Report_4_13_16-1.pdf.
[9] City of Chicago Office of the Inspector General, *supra* note 1.
[10] *Id*. at 2.
[11] *Id*. at 48.

39. As a result of frequent police detentions pursuant to the wrongful warrant, Mr. Cole's children will no longer ride with him in any car that is registered to him. He was unable to visit his father on his deathbed, and has refrained from visiting his elderly mother, in addition to opting against other social and community activities, as a result of fear and terror accompanying police detentions and police conduct. His personal relationships have been strained due to CPD's frequent unconstitutional detentions.

40. Mr. Cole has been forced to take public transit during a pandemic, despite his condition of having asthma, due to the fear and terror accompanying police detentions and police conduct, made worse by the fear that he will be exposed to COVID-19 if he is detained. In addition, Mr. Cole has had difficulty obtaining jobs as a result of the incorrect warrant.

41. Mr. Cole lives in a state of perpetual tension and unease; at any moment, he could be wrongfully stopped by police and subjected to danger to his life despite copious indications, known to both CPD and the City of Chicago, that he is not the individual sought by the warrant.

## LEGAL CLAIMS
## COUNT I – 42 U.S.C. § 1983
### Unlawful Policy and Practice - Fourth Amendment

42. Plaintiff repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

43. Count I is alleged against Defendant City of Chicago.

44. The City of Chicago has engaged in a pattern of Fourth Amendment violations against Plaintiff, has failed to take any reasonable steps to ensure that Plaintiff will not continue to be stopped and held without cause, and as such Plaintiff has a reasonable fear that these violations of his right to be free from unreasonable seizures will continue.

45. The City of Chicago, through its Police Department, Police Superintendent, Police Board, Mayor, and City Council has interrelated *de facto* policies, practices, and customs which included, *inter alia*:

    a. Failure to maintain an adequate data management system that would prevent CPD officers from unconstitutionally detaining people;

    b. Failure to take all necessary steps to ensure the identity of a suspect before subjecting them to prolonged detention;

    c. Failure to effectively use CLEAR to protect against unconstitutional detention due to mistaken identity;

46. The interrelated policies, practices, and customs alleged above are or should be well-known within the CPD.

47. The CPD is aware of the harms suffered by Plaintiff as a result of the interrelated policies, practices, and customs alleged above.

48. The City has implemented, enforced, encouraged, and sanctioned CPD's policies, practices, and customs alleged above in violation of Plaintiff's Fourth Amendment rights.

49. As a direct and proximate result of the actions of the City and CPD, the Fourth Amendment rights of Plaintiff have been violated.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgement in his favor against the Defendant and enter an Order requiring the following actions:

a. Enjoining Defendant to (1) take immediate steps to ensure that CPD officers will no longer unlawfully detain or arrest Mr. Cole, including making appropriate notations in all relevant warrant and CLEAR databases; (2) provide Mr. Cole with official

      documentation that indicates that he is not the subject of the outstanding warrant for Darren H. Cole and/or the CLEAR record for Darren H. Cole; and (3) provide any other relief necessary to protect Mr. Cole from future unlawful detentions or arrests at the hands of CPD;

b. Awarding Plaintiff compensatory and punitive damages;

c. Awarding Plaintiff reasonable attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and

d. Granting any other such relief as the Court may determine is just and proper.

## JURY DEMAND

Plaintiff demands trial by jury

                                                        Respectfully submitted,

                                                        s/Sheila A. Bedi_____

                                                        *One of Plaintiff's Attorneys*

Sheila A. Bedi
Luke Fernbach*
Sara Rosenburg*
Community Justice Civil Rights Clinic
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611
(312) 503-2492
sheila.bedi@law.northwestern.edu
LukeFernbach2021@nlaw.northwestern.edu
SaraRosenburg2022@nlaw.northwestern.edu
 *Law student licensed pursuant to Illinois
 Supreme Court Rule 711*

Daniel Massoglia
First Defense Legal Aid
601 S. California Ave.
Chicago, IL 60612
708-797-3066
daniel@first-defense.org