### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Darren Cole,

             Plaintiff,

     v.

The City of Chicago,

             Defendant.

No. 21-CV-1640

Hon. Mary M. Rowland

### PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT OF A
### TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION

Plaintiff Darren Cole is a resident of the City of Chicago who, for the past fifteen years, has been subjected to continuous unconstitutional stops and detentions, harassment, and abuse at the hands of the Chicago Police Department ("CPD"). Since 2006, Mr. Cole has been wrongly detained by police approximately sixty times because of an outstanding arrest warrant for another man, one Darren H. Cole. Plaintiff Darren Cole shares his full name and birthdate with Darren H. Cole, and the two men's driver's license numbers are nearly identical. Upon information and belief, Darren H. Cole is also identified as a gang member in the Citizen Law Enforcement and Reporting ("CLEAR") database.

During these wrongful stops, CPD officers regularly handcuff and detain Mr. Cole, often for upwards of two to four hours, and they routinely call additional officers to the scene. CPD officers have taken Mr. Cole into custody and transported him to police stations approximately ten times. CPD officers have pointed guns at Mr. Cole and have verbally assaulted and threatened him. CPD officers have also physically assaulted Mr. Cole multiple times: they have punched him in the mouth, shoved him onto the hood of his car, and forced him at gunpoint to

lay face-down on the ground in snow. The CPD's ongoing harassment has caused Mr. Cole to suffer significant harms and to develop a fear that whenever he drives his car, he might end up wrongfully stopped, detained, harassed, assaulted, or even shot by CPD officers.

The CPD has known about its ongoing wrongful harassment of Mr. Cole and has failed to take any meaningful steps to remedy the situation. Multiple CPD officers, supervisors and at least one sergeant know that CPD will continually stop and detain Mr. Cole under the mistaken impression he is Darren H. Cole. Yet no CPD employee or city official has made any effort to protect Mr. Cole from future unconstitutional stops or detentions. These failures are part of the CPD's pattern and practice of failing to effectively manage information to ensure that the constitutional rights of Chicagoans are protected. Counsel for Mr. Cole has repeatedly reached out to the CPD's counsel about the ongoing harassment of Mr. Cole, and the CPD's counsel have refused to respond. His only option is to seek emergency relief from this Court so that he may live his life without the threat of constant unconstitutional arrests, detention and other forms of police violence.

Pursuant to Rule 65 of the Fed. R. Civ. P., Mr. Cole seeks a preliminary injunction ordering the Chicago Police Department to: (1) take immediate steps to ensure that CPD officers will no longer unlawfully detain or arrest Mr. Cole, including making appropriate notations in all relevant warrant and CLEAR databases; (2) provide Mr. Cole with official documentation that indicates that he is not the subject of the outstanding warrant for Darren H. Cole and/or the CLEAR record for Darren H. Cole; and (3) any other relief necessary to protect Mr. Cole from future unlawful detentions or arrests at the hands of CPD.

Preliminary injunctions are granted in extraordinary situations where there is a clear showing of need. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Cooper v. Salazar*, 196 F.3d

809 (7th Cir. 1999). The need for a preliminary injunction in this case is obvious and immediate. The CPD's continued failure to act constitutes a constant and ongoing threat to Mr. Cole's constitutional rights. Mr. Cole has been pulled over by CPD officers due to this misunderstanding as recently as December 7, 2020. His reasonable fear of being wrongly pulled over, detained, and physically harmed continues to prevent him from driving any car in his own name.

## FACTUAL ALLEGATIONS

Since 2006, the CPD has pulled over and subsequently detained Plaintiff Darren Cole approximately sixty times because they repeatedly mistake him as the subject of an active arrest warrant for another man, one Darren H. Cole. Plaintiff Mr. Cole has the same first name, last name, and birthdate as Darren H. Cole, and the two men have nearly identical driver's license numbers. While Plaintiff Mr. Cole has no outstanding warrants, Darren H. Cole is the subject of an active arrest warrant, and upon information and belief he is also identified as a gang member in the CPD's CLEAR database.

During these stops, the CPD has subjected Mr. Cole to unconstitutional detentions in violation of his Fourth Amendment Rights. The CPD has long been on notice that Mr. Cole is being subjected to repeated and ongoing wrongful stops and detentions because of the warrant for Darren H. Cole, and yet it has failed to take any meaningful steps to remedy the situation by updating its records accordingly. As such, each stop and detention of Mr. Cole based on the warrant for Darren H. Cole violates his constitutional rights. When CPD officers pull Mr. Cole over, they often handcuff him and detain him for hours while they ascertain whether he is the subject of the warrant. Though these incidents have most often been confined to interactions on the street, on approximately ten of these occasions police have transported Mr. Cole to police

stations on Chicago's west side, most often the CPD's 11th District station. The CPD has repeatedly subjected Mr. Cole to verbal and physical threats and abuse during these unconstitutional stops.

Mr. Cole has made repeated attempts to rectify the CPD's harassment, and yet he continues to be unconstitutionally stopped and detained:

- The morning after his first unlawful detention on or about the spring of 2006, Mr. Cole traveled to the police station at W. Harrison St. and S. Kedzie Ave. to clear up any confusion that may have led to the stop, but CPD officers told him that there was "nothing that they could do" and advised him to always travel with his driver's license, car insurance, and social security card to prove his identity.

- In or about 2008, after his wife received a phone call wrongfully indicating that he had an outstanding arrest warrant, Mr. Cole travelled to CPD Headquarters and requested to be fingerprinted in order to prove that he was not Darren H. Cole.

- In or about 2014, Mr. Cole engaged the help of a law firm, through whose efforts he was able to obtain a letter on official letterhead from the then-Sheriff of Marion County, Jerry DeVore, indicating that Mr. Cole was *not* the Darren H. Cole who possessed an outstanding warrant. *See* Exhibit A.

- In or about 2018, when Mr. Cole visited the 11th District police station to attempt to clear up the matter, he obtained a handwritten note from Sergeant Osborne (Star # 1316) indicating that warrant W04W2579 was not for Mr. Cole and providing Sergeant Osborne's personal contact information for reference use by CPD officers in the event of a mistaken stop. *See* Exhibit B.

- On or about the afternoon of April 1, 2019, Mr. Cole travelled to the Illinois State Police station in Villa Park, Illinois, and was informed by personnel there that the problem regarding the mistaken warrant was the responsibility of Defendant City of Chicago. Later that same day, Mr. Cole travelled to the Department of Motor Vehicles ("DMV") Office at S. Laramie Ave. and W. Harrison St. in Chicago in an effort to clear his license or license plate of any flags. Mr. Cole called 911 for police assistance prior to entering the DMV, and the responding CPD officer was the same officer who had pulled him over days earlier. The CPD officer and Mr. Cole spoke with the DMV supervisors, but they were told that the DMV did not have the ability to resolve the problem regarding the mistaken warrant.

The CPD has known about its ongoing wrongful harassment of Mr. Cole but has failed to take any meaningful steps to remedy the situation. Multiple CPD officers—upon information and belief, generally from the 11th District—have recognized Mr. Cole during these incidents and have on several occasions told other CPD officers that "he's not the guy" or "the warrant's not for him." When high-ranking CPD officer Sergeant Osborne was made aware of the situation, the only step that he took was to provide Mr. Cole with a short handwritten note and advise him to present the note to CPD officers when he is stopped. Mr. Cole has produced this note for CPD officers during subsequent stops, but CPD officers have generally ignored the note and have continued to unlawfully detain Mr. Cole. Counsel for the CPD was made aware of the situation on October 13, 2020 but have refused to reply to multiple requests for relief made by counsel for Mr. Cole. *See* Exhibit C. The CPD's failure to take any real steps to remedy Mr. Cole's ongoing harassment despite clear knowledge that he is not the subject of any active warrants leaves Mr.

Cole at significant risk of experiencing substantial harm in the form of continued Fourth Amendment violations.

The CPD has failed to utilize its data collection and management systems, including CLEAR, in a manner that ensures that accurate records are maintained so as to protect the constitutional rights of Chicago residents like Mr. Cole. The CPD has for years been on notice of the deficiencies in these systems. For example, the Department of Justice's ("DOJ") investigation of CPD and subsequent 2017 report revealed that the deficiencies within CPD's information management systems "contribute to the Department's failure to identify and correct unconstitutional policing."[1] *See* Exhibit D. A 2016 Police Accountability Task Force ("PATF") Report reached the same conclusions. *See* Exhibit E. The PATF Report found that CPD's technology systems were "[o]utdated, inadequate, and fragmented," and found that CLEAR specifically offers "limited functionality."[2] Finally, a review of CPD's Gang Database by the City of Chicago Office of the Inspector General ("OIG Report") noted that the database contained "incomplete and contradictory data."[3] *See* Exhibit F. The CPD's failure to effectively collect and manage data has facilitated the ongoing violations of Mr. Cole's constitutional rights.

## ARGUMENT

Because Plaintiff satisfies the requirements for obtaining a preliminary injunction, this Court should grant this motion and immediately order the City to remedy its actions, inactions, and inadequacies causing Mr. Cole's ongoing and foreseeable harm.

---

[1] United States Department of Justice Civil Rights Division & United States Attorney's Office Northern District of Illinois, *Investigation of the Chicago Police Department* 124 (Jan. 2017), https://www.justice.gov/opa/file/925846/download (DOJ Report).

[2] Police Accountability Task Force, *Recommendations for Reform: Restoring Trust Between the Chicago Police and the Communities They Serve* 79, 80 (April 2016), https://chicagopatf.org/wp-content/uploads/2016/04/PATF_Final_Report_4_13_16-1.pdf (PATF Report).

[3] City of Chicago Office of Inspector General, *Review of the Chicago Police Department's "Gang Database"* 19 (April 2019), https://igchicago.org/wp-content/uploads/2019/04/OIG-CPD-Gang-Database-Review.pdf (OIG Report).

**LEGAL STANDARD**

A preliminary injunction is granted when the Plaintiff shows (1) "some likelihood" of succeeding on the merits, (2) that he has "no adequate remedy at law," (3) and that he will "suffer irreparable harm if the injunction is denied." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 382 (7th Cir. 1984). If the Plaintiff meets this burden, then a court must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied, as well as "the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11-12 (7th Cir. 1992).

Mr. Cole succeeds on each factor, as discussed below. Mr. Cole will succeed on the merits because the City of Chicago has violated his Fourth Amendment right to be free from unreasonable searches and seizures by failing to prevent CPD officers from unconstitutionally stopping and detaining him because of mistaken identity. Mr. Cole has sought alternate remedies to no avail, as the City of Chicago has refused to respond to his pleas for assistance, and monetary damages will not remedy the harm that Mr. Cole is experiencing. Mr. Cole faces irreparable harm if he is subject to further seizures or the threat of further seizures, as each one is extremely traumatic to him and the fear of being seized keeps him from living his life normally. Finally, the balance of harms favors Mr. Cole because the harm to CPD in using its information management systems to prevent Mr. Cole from being stopped and detained is negligible. As such, this Court must act to protect Mr. Cole from ongoing violations of his Fourth Amendment rights.

I. **Mr. Cole will succeed on the merits of his *Monell* claim.**

In order to demonstrate a substantial likelihood of success on the merits, a plaintiff must demonstrate "a plausible claim on the merits." *Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009). Courts should not "improperly equat[e] 'likelihood of success' with 'success.'" *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 782 (7th Cir. 2011), quoting *University of Texas v. Camenisch*, 451 U.S. 390, 394 (1981). "[T]he threshold for establishing likelihood of success is low," in that a plaintiff need "only to present a claim plausible enough that (if the other preliminary injunction factors cut in their favor) the entry of a preliminary injunction would be an appropriate step." *Id*. at 782-83. To determine whether a plaintiff's legal arguments have a likelihood of succeeding, courts use whatever existing test would be employed to decide the merits of the case in a different procedural posture. *See S./Sw. Ass'n of Realtors v. Evergreen Park, IL.*, 109 F. Supp. 2d 926, 927 (N.D. Ill. 2000).

A. **Mr. Cole's claim that the City of Chicago has violated his Fourth Amendment rights by failing to take appropriate steps to ensure that he is no longer unlawfully stopped and detained will succeed on the merits.**

A municipality can be held liable for systemic constitutional violations. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). To establish municipal liability, a plaintiff must show that he "(1) suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policymaking authority . . . . which (3) was the proximate cause of his injury." *King v. Kramer*, 763 F.3d 635, 649 (7th Cir. 2014). Mr. Cole suffered repeated deprivations of his Fourth

Amendment right to be free from unlawful seizures as a direct result of CPD's widespread custom of failing to maintain an accurate and effective information management system.

> i.  *Mr. Cole has suffered a deprivation of his constitutional right to be free from unlawful seizures.*

Mr. Cole has been subjected to numerous unlawful detentions at the hands of Chicago police officers, having been stopped and detained approximately sixty times, with approximately ten of those detentions resulting in Mr. Cole being taken to police stations. The United States Constitution guarantees Mr. Cole's right to be free from unreasonable searches and seizures. U.S. Const. amend. IV.

The violations of Mr. Cole's Fourth Amendment rights resulted from CPD officials' failure to take any meaningful steps to remedy the situation after they became aware that Mr. Cole was not the subject of the arrest warrant for Darren H. Cole. Once the CPD became aware that Mr. Cole was being wrongfully detained on account of the warrant for Darren H. Cole and failed to take appropriate steps to prevent future wrongful detentions, each subsequent stop and detention based on the warrant was inherently unreasonable and in violation of the Fourth Amendment.

The CPD received clear and repeated notice that Mr. Cole was being falsely stopped and detained on the basis of the warrant, both through Mr. Cole's repeated efforts to clear his name and through every arrest report and activity card that documented his interactions with police. Multiple CPD officers and officials have long been aware that Mr. Cole is being subjected to a pattern of wrongful detentions. Officers—upon information and belief, generally operating out of the 11th District—have on several occasions recognized Mr. Cole and stated that he was "not the guy" during incidents of false detention. Sergeant Osborne provided Mr. Cole with a handwritten note stating that he is not the subject of the warrant, but on information and belief took no further

steps to remedy the situation. Despite the CPD's clear knowledge of the ongoing mistake, Mr.

Cole has received no relief. He was falsely detained on account of the warrant as recently as

December 7, 2020.

> ii. *CPD's failure to maintain an accurate information management system amounts to a widespread custom of constitutional violations.*

The CPD's failure to rectify its ongoing violations of Mr. Cole's Fourth Amendment

rights has resulted in part from the CPD's widespread policy, practice, and custom of failing to

maintain an accurate information management database. A plaintiff can "demonstrate the

existence of a municipal policy or custom by establishing: (1) an express policy that . . . causes a

constitutional deprivation; (2) a widespread practice that, although not authorized by written law

or express municipal policy, is so permanent and well settled as to constitute a custom or usage

with the final force of law; or (3) that the constitutional inquiry was caused by a person with final

policymaking authority." *Pesek v. Marzullo*, 566 F. Supp. 2d 834 (N.D. Ill. 2008). Despite clear

and repeated notice of deficiencies in its record-keeping practices in the form of reports from

large-scale investigations,[4] the CPD has failed to take any steps to ensure that the constitutional

rights of Chicago residents like Mr. Cole are not violated due to its deficient information

management systems.

A widespread custom can be demonstrated "by showing a series of bad acts and inviting

the court to infer from them that the policymaking level of government was bound to have

noticed what was going on and by failing to do anything must have encouraged or at least

condoned, thus in either event adopting, the misconduct of subordinate officers." *Jackson v.*

*Marion County*, 66 F.3d 151, 152 (7th Cir.1995). The CPD has engaged in such a series of bad

acts by falsely detaining Mr. Cole numerous times and taking no remedial steps to ensure that

---

[4] *See* DOJ Report, *supra* note 1; PATF Report, *supra* note 2; OIG Report, *supra* note 3.

such detentions no longer occur. Where a municipality has "actual or constructive knowledge that its agents will probably violate constitutional rights, it may not adopt a policy of inaction." *King v. Kramer*, 680 F.3d 1013, 1021 (7th Cir. 2012) (quotations omitted); *see also Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 966 (7th Cir. 2019) ("a 'policy' can take the form of a hands-off approach or a policy to do nothing"); *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017) ("this court has recognized these principles for years" (citing *Sims v. Mulcahey*, 902 F.2d 524 (7th Cir. 1990), *Avery v. Cty. of Burke*, 660 F.2d 111, 114 (7th Cir. 1981), *Murray v. City of Chicago*, 634 F.2d 365, 366–67 (7th Cir. 1980))).

. The CPD has been on notice since 2006 that Mr. Cole has been repeatedly falsely detained for a warrant of which he is not the subject. Mr. Cole has himself brought this issue to the CPD's attention many times. The letter from Sergeant Osborn shows that the CPD is on notice, and his handwritten note is nothing more than a feeble, half-hearted attempt to remedy the situation when a more meaningful intervention was and is necessary.

In addition to the incidents specific to Mr. Cole, the CPD has been on notice for years that its information management systems are flawed and create the potential for constitutional violations. Investigations by the Department of Justice and the Police Accountability Task Force revealed deficiencies in the CPD's information management systems. The DOJ Report flatly states that, because of the siloed, disconnected, and incomplete nature of the data maintained by the CPD, "personnel within CPD often lack access to the data that would help them perform their duties."[5] The PATF Report similarly found that the "limited functionality" of the CPD's information management systems limits their effectiveness.[6] The OIG Report as well raised

---

[5] DOJ Report, supra note 1 at 125.
[6] PATF Report, supra note 2 at 80.

concerns as to the quality of CPD's of data management and recordkeeping.[7] These reports show that the CPD has been on notice that its information management systems are deficient and has failed to take any meaningful actions to ensure that information contained in CLEAR and other databases is accurate—even when specifically called to do so, as in Mr. Cole's case.

The "critical question" in *Monell* is whether "the action about which the plaintiff is complaining [is] one of the institution itself, or is it merely one undertaken by a subordinate actor?" *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017). CPD's repeated unconstitutional detentions of Mr. Cole, despite clear notice both specific to Mr. Cole and broadly related to its inadequate information management systems, demonstrates that the violations of Mr. Cole's Fourth Amendment rights are an action not just of the individual officers, but of CPD as an institution.

> iii. *CPD's failure to maintain an accurate information management system caused Mr. Cole's constitutional injury.*

To establish causation, a plaintiff must show that "municipal action was the moving force behind the constitutional injury." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 598 (7th Cir. 2019). This requires demonstrating a "direct causal link" between the municipal action and the constitutional injury. *Id.* at 599. Here the connection is obvious. If CPD had maintained an accurate information management system, Mr. Cole would have been released from the traffic stops at issue within minutes. Instead, because CPD's system presented the officers with incomplete information related to Mr. Cole, those stops turned into sometimes violent detentions that lasted hours and deprived Mr. Cole of his Fourth Amendment rights. There is thus a direct causal link between CPD's faulty information management systems and Mr. Cole's repeated unlawful detentions.

---

[7] OIG Report, supra note 3 at 48.

        *iv.*   *Mr. Cole can pursue his claim against the City without pursuing claims against individual officers.*

Mr. Cole can secure injunctive relief against the City without including claims against any individual officers. In *Thomas v. Cook County Sheriff's Department*, 604 F.3d 293, 305 (7th Cir. 2010), the court found that the plaintiff's *Monell* claims against Cook County did not require that individual officers first be found liable. "[A] municipality can be held liable under *Monell,* even when its officers are not, unless such a finding would create an *inconsistent* verdict." *Id.* (emphasis in original). Finding liability against the City, with no finding whatsoever against individual officers, does not create an inconsistent verdict, and Mr. Cole is free to bring his claim solely against the City. *See Id.* ("[w]hat if plaintiff here had only sued the County[?]"); *see also Estate of McIntosh v. City of Chicago*, No. 15 C 1920, 2015 WL 5164080, at *7 (N.D. Ill. Sept. 2, 2015) ("there is no hard and fast rule that individual officer liability is always required in order to find liability under *Monell*."); *Awalt v. Marketti*, No. 11 C 6142, 2012 WL 1161500, at *11 (N.D. Ill. April 9, 2012) ("A plaintiff alleging a *Monell* claim can succeed against a municipality on that claim despite failing to demonstrate to a jury that a particular individual defendant is liable for the unconstitutional acts alleged"); *Martinez v. Cook County*, No. 11 C 1794, 2011 WL 4686438, at *1 (N.D. Ill. Oct. 4, 2011) ("a plaintiff can succeed against a municipality under a *Monell* claim despite failing to prove that any particular individual defendant is liable for violating the plaintiff's constitutional rights so long as the two results are compatible."); *Bell v. City of Chicago*, No. 09 C 4537, 2010 WL 432310, at *4 (N.D. Ill. Feb. 3, 2010), quoting *Thomas*, 604 F.3d at 455 ("in certain instances, a constitutional violation [can] solely be tied to an unconstitutional municipal policy if it [can] be shown that the public entity's 'policies caused the harm, even if the officer was not individually culpable.'"); *Terry v. Cook County Dep't of Corr.*, No. 09 C 3093, 2010 WL 2720754, at *3 (N.D. Ill. July 8, 2010) (same).

II.    **There is no adequate alternative remedy at law, and Mr. Cole will suffer irreparable harm if a preliminary injunction is not granted.**

The City of Chicago has engaged in a systemic pattern of unconstitutionally detaining Mr. Cole and has failed to take any appropriate steps to ensure that his constitutional rights are protected. This claim is not the sort that can be healed later through monetary damages. No amount of money damages will relieve Mr. Cole of the burden of persistent threats of being unconstitutionally stopped and detained, such that he is reasonably fearful to leave his home. *See Daniels v. Southfort*, 6 F.3d 482, 485 (7th Cir. 1993) (explaining that "injunctive relief is appropriate in a § 1983 action where there is a persistent pattern of police misconduct").

CPD's continued violation of Mr. Cole's Fourth Amendment rights constitutes irreparable harm sufficient to warrant a preliminary injunction. *See Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978) ("The existence of a continuing constitutional violation constitutes proof of an irreparable harm, and its remedy certainly would serve the public interest."). Until an injunction is granted, Mr. Cole will continue to suffer irreparable harm in his ability to maintain employment and relationships with his friends and family and to move freely.

III.    **The balance of harms favors the entry of a preliminary injunction.**

The City would suffer no harm by taking the measures requested here. On the other hand, the continued threat of being unlawfully stopped and detained imposes considerable harm on Mr. Cole, as he is currently unable to leave his home without immense fear. This is impacting his mental health, as well as his ability to maintain employment and relationships with his friends and family, and that harm will only continue if this Court does not intervene.

Moreover, it is in the public interest to ensure that the City of Chicago does not continue to violate the Fourth Amendment rights of Mr. Cole. *See Am. Civil Liberties Union of Ill. v.*

*Alvarez*, 679 F.3d 583, 590 (7th Cir. 2012) (public interest is not harmed by preliminarily

enjoining government action that is probably unconstitutional); *Whole Woman's Health All. v.

Hill*, 937 F.3d 864, 875 (7th Cir. 2019), *cert. denied*, 141 S. Ct. 189 (2020) (finding that

"[e]nforcing a constitutional right is in the public interest.").

**CONCLUSION**

For the foregoing reasons, this Court should order an evidentiary hearing on the motion

for a preliminary injunction at the earliest possible date[8] and/or enter a preliminary injunction

requiring the City of Chicago to (1) take immediate steps to ensure that CPD officers will no

longer unlawfully detain or arrest Mr. Cole, including making appropriate notations in all

relevant warrant and CLEAR databases; (2) provide Mr. Cole with official documentation that

indicates that he is not the subject of the outstanding warrant for Darren H. Cole and/or the

CLEAR record for Darren H. Cole; and (3) any other relief necessary to protect Mr. Cole from

future unlawful detentions or arrests at the hands of CPD.

Respectfully submitted,

Sheila A. Bedi
*One of Plaintiff's Attorneys*

Sheila A. Bedi
Luke Fernbach*
Sara Rosenburg*
Community Justice Civil Rights Clinic
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611
(312) 503-2492
sheila.bedi@law.northwestern.edu

---

[8] Plaintiff reserves the right to request limited discovery prior to any evidentiary hearing on his Motion for a Preliminary Hearing

LukeFernbach2021@nlaw.northwestern.edu
SaraRosenburg2022@nlaw.northwestern.edu
*Law student licensed pursuant to Illinois
Supreme Court Rule 711

Daniel Massoglia
First Defense Legal Aid
601 S. California Ave.
Chicago, IL 60612
708-797-3066
daniel@first-defense.org