IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Darren Cole, | |
| Plaintiff, | No. 21-CV-1640 |
| v. | Hon. Judge Mary M. Rowland |
| The City of Chicago, | Hon. Mag. Judge Sunil R. Harjani |
| Defendant. | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Darren Cole, by and through his undersigned attorneys, responds to Defendant City of Chicago's Motion to Dismiss for Failure to State a Claim, and in support states as follows:

### INTRODUCTION

Plaintiff Darren Cole, due to the unconstitutional practices of the Chicago Police Department and City of Chicago, and through no fault of his own, has lived a dystopian nightmare of repeated police detention, harassment, insult, and injury for almost 15 years. Mr. Cole sought both emergency injunctive relief as well as damages after City attorneys repeatedly spurned Mr. Cole's counsel's attempts to resolve this matter without litigation. Mere hours before the Preliminary Injunction hearing scheduled by this Court, and as a result of this complaint and Plaintiff's emergency motion, Defendant City agreed to implement significant remedies to redress Mr. Cole's injunctive claims. See Dkt 9., Status Report. But now Defendant City attempts to argue that Mr. Cole should be further denied his day in court and seeks a wholesale dismissal of his claims. The City misapplies and misunderstands relevant law and fully ignores its legal obligations to protect Chicagoans like Mr. Cole from ongoing police harassment and unlawful police stops, arrests and detentions. The City's Motion should therefore be denied.

1

**STATEMENT OF FACTS**

Chicago police have detained and arrested Plaintiff Darren Cole 60 times since 2006 on a warrant bearing the name of another man. Complaint, Dkt. 1 ¶¶ 1, 6. Mr. Cole has not been charged following any of these detentions. Dkt. 1 ¶¶ 31. However, CPD officers have often used violence against Mr. Cole—punching Mr. Cole in the face on one occasion and forcing him facedown in the snow with a gun to the back of his head on another. Dkt. 1 ¶¶ 6, 11-13, 31. Mr. Cole carries documentation indicating that he is not the subject of the other man's warrant, including a note from a CPD sergeant, and officers in areas of the city where he is frequently detained on the errant warrant know, and communicate to other officers that they know, that Mr. Cole is not the person sought by the warrant. Dkt. 1 ¶¶ 27-28, 32. Despite this copious evidence, the stops, detentions and arrests have continued far beyond the bounds of reason. Dkt. 1 ¶¶ 27-29.

Chicago police have not made modifications or notations in their law enforcement information data repository, CLEAR, despite the numerous officers—agents of the city—who have interacted with Mr. Cole and possess knowledge that he is not the correct target of the warrant. Dkt. 1 ¶ 24, 32, 36-37, 45. Upon information and belief, CPD officers generated documents including contact cards, arrest reports, and activity reports that described Mr. Cole's mistaken identity. Dkt. 1 ¶ 33. Each of these documents were reviewed by supervisors who nonetheless took no action to prevent future arrests. Dkt. 1 ¶ 33, 45.

Officials from the Illinois State Police, Illinois Department of Motor Vehicles, and government of Marion County have told Mr. Cole over the years that this warrant misidentification is the responsibility of Chicago police to fix. Dkt 1. ¶¶ 17-18, 26. Indeed, Chicago police recordkeeping practices and systems have been identified as insufficient and error-prone by no less than three independent reports evaluating the City and Department's activities—those of the United States

Department of Justice, the Office of the Inspector General of the City of Chicago, and Mayor Rahm Emanuel's Police Accountability Task Force. Dkt. 1 ¶ 37.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing a pleader's right to relief and so that the defendant has "fair notice" of the claim. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain sufficient factual matter to state a facially plausible claim such that the court may reasonably infer that defendants are liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss under Rule 12(b)(6), the court accepts all well-pled allegations in the complaint as true, and construes the complaint in the light most favorable to the plaintiff with all possible inferences' being drawn in the plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

## ARGUMENT

### I. PLAINTIFF'S SECTION 1983 CLAIMS ARE NOT TIME-BARRED; HIS HARM HAS BEEN ONGOING

The City argues that because the City's unconstitutional policies and practices resulted in CPD officers unlawfully detaining Mr. Cole for a decade and a half, and because Mr. Cole did not file suit after CPD officers first mistook him for a wanted man, he is now time barred from challenging this conduct. This is not the law.

Generally, the two-year statute of limitations period for civil rights claims accrues when the plaintiff knows or has reason to know his constitutional rights have been violated. *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992). However, "when the violation of the plaintiff's constitutional rights is a continuing one, the statute of limitations does not start to run *any earlier* than the last day of the ongoing injury." *Devbrow v. Kalu*, 705 F.3d 765, 770 (7th Cir. 2013) (citing *Heard v. Sheahan*,

253 F.3d 316, 319 (7th Cir. 2001)); *see also Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir. 1983) ("the statute of limitations does not begin to run on a continuing wrong till the wrong is over and done with"). The "continuing violation doctrine" is an accrual rather than a tolling doctrine, and "operates to *delay* the start of the limitations period." *Devbrow*, 705 F.3d at 770; *see also Heard*, 253 F.3d at 319. This doctrine further allows the plaintiff to "reach back" to initial events, "even if that beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct." *Heard*, 253 F.3d at 319.

Here, Plaintiff has suffered continuing violations of his Fourth Amendment rights. Because the City failed to protect Mr. Cole from repeated CPD harassment and unlawful detentions, he continues to suffer harm—he suffered harm when CPD officers detained him in December 2020 and every day after then when he lived with the constant fear of police harassment and abuse because of CPD's refusal to correct his record. *See Heard*, 253 F. 3d at 318 (finding that "every day that [the defendants] prolonged [plaintiff's] agony by not treating his painful condition marked a fresh infliction of punishment that caused the statute of limitations to start running anew). The December 2020 unlawful detention occurred well within two years of the date Plaintiff filed this lawsuit. Therefore, pursuant to the continuing violation doctrine, Plaintiff can reach back and sue the Defendants for the initial event of failing to maintain accurate records that would have protected Mr. Cole from repeated unlawful CPD contact. *See, e.g.*, *Taylor*, 712 F. 2d at 1119 (in a case involving copy infringement, the court found that the defendant's initial copying, which occurred before the statutory period, "was not a separate and completed wrong but simply the first step in a course of wrongful conduct that continued till the last copy of the infringing map was sold by [the defendant]"); *Blankenship v. Pushpin Holdings, L.L.C.*, F. Supp. 3d 788, 794-95 (N.D. Ill. 2016) (applying continuing violation doctrine and finding that plaintiffs' claims under the Illinois

Consumer Fraud Act were not time barred); *Watkins v. Ghosh*, No. 11 C 1880, 2011 WL 5981006, at *3 (N.D. Ill. Nov. 28, 2011) (rejecting defendants' argument that plaintiff's claims were untimely because "[w]hile [plaintiffs'] injury occurred in 2006, he has sufficiently alleged an ongoing denial of medical care that continued through 2010").

Mr. Cole was repeatedly detained and his rights repeatedly violated for more than a decade for one cause: the City's policies, practices, customs, and usages related to its deficient recordkeeping and failure to ensure that individuals are protected from unconstitutional stops, detentions and arrests due to mistaken identity. Each time Mr. Cole was held while police attempted to verify his identity, the act was unlawful, and the cause was the same: a constitutional tort that was ongoing for 15 years until Plaintiff filed suit and obtained an initial remedy to prevent future tortious acts.[1]

## II. PLAINTIFF HAS SUFFICIENTLY PLED A FOURTH AMENDMENT *MONELL* CLAIM AGAINST THE CITY

The City argues that because individual officers behaved "reasonably" during each encounter with Mr. Cole, and because the harm Mr. Cole suffered did not result from a practice that has the force of "law", his claim should be dismissed. The Defendant's arguments fail.

### A. Individual officers need not be found liable in order for Plaintiff's *Monell* claim to proceed.

Even assuming arguendo that on 60 different occasions, individual CPD officers had probable cause to stop, detain and/or arrest Mr. Cole, Mr. Cole's *Monell* may proceed. Plaintiff alleges one Count in his complaint—a *Monell* claim against the Defendant City alleging that it failed to take reasonable steps to protect Mr. Cole from unlawful police stops, detentions, arrests and police

---

[1] The fact that the City quickly and with great ease remedied Mr. Cole's injunctive claims when it was staring down the barrel of an emergency evidentiary hearing is worth noting: within four days of the filing of Plaintiff's Motion for a Preliminary Injunction/Temporary Restraining Order, the City was able to identify and have quashed the outstanding warrant and inform every officer not to detain Mr. Cole, actions it could have taken in response to Mr. Cole's years of repeated attempts, on his own and through counsel, to simply live life without being arrested due to a warrant for a completely different person.

harassment. Dkt 1 at ¶ 44. The Plaintiff further alleges violations of his Fourth Amendment rights arising from CPD's well-documented failures to maintain an adequate data management system and the failures of multiple CPD supervisors who knew that CPD officers repeatedly subjected Mr. Cole to unlawful stops, detentions, arrests, and police harassment and abuse based on mistaken identity, but who failed to protect him from these violations. Dkt at ¶¶ 33, 44.

Despite law flatly to the contrary, Defendant claims Mr. Cole is unable to hold the City liable because "a plaintiff must first establish that a municipal employee committed a constitutional violation" in order to then establish municipality liability. Def. Mot. at 3. In support, Defendant cites only *Sallenger v. City of Springfield,* 630 F.3d 499, 504 (7th Cir. 2010). But *Sallenger* is not controlling here.

In *Sallenger*, the Plaintiff alleged that officers who restrained a "large actively psychotic man" after a violent struggle, violated the Fourth Amendment when they failed to immediately render medical care after the man stopped breathing and ultimately died. The Seventh Circuit found that because "the Fourth Amendment requires reasonableness, not immediacy" and because the officers did attempt aid "very soon" after realizing that the man stopped breathing, the officers did not run afoul of the constitution. *Sallenger*, 630 F.3d 499, 504. The court further reasoned that without an underlying constitutional violation, the Plaintiff's failure-to-train *Monell* claim was doomed.

The case is inapplicable here because Mr. Cole's claim is not related to officer training, but instead sounds in CPD's well-documented failure to maintain an accurate information management system and failure to implement other policies and regulations to protect residents from unlawful arrests, stops and detentions. CPD's failures in this regard caused Mr. Cole received multiple deprivations of his Fourth Amendment right to be free from unlawful searches and seizures.

Courts routinely find that where—as the case here—systemic widespread deficiencies exist, individual officers need not be found liable for *Monell* claims to proceed. See *Estate of McIntosh v. City*

6

*of Chicago*, No. 15 C 1920, 2015 WL 5164080, at *7 (N.D. Ill. Sept. 2, 2015) ("there is no hard and fast rule that individual officer liability is always required in order to find liability under *Monell*."); *Awalt v. Marketti*, No. 11 C 6142, 2012 WL 1161500, at *11 (N.D. Ill. April 9, 2012) ("A plaintiff alleging a *Monell* claim can succeed against a municipality on that claim despite failing to demonstrate to a jury that a particular individual defendant is liable for the unconstitutional acts alleged"); *Martinez v. Cook County*, No. 11 C 1794, 2011 WL 4686438, at *1 (N.D. Ill. Oct. 4, 2011) ("a plaintiff can succeed against a municipality under a *Monell* claim despite failing to prove that any particular individual defendant is liable for violating the plaintiff's constitutional rights so long as the two results are compatible."); *Bell v. City of Chicago*, No. 09 C 4537, 2010 WL 432310, at *4 (N.D. Ill. Feb. 3, 2010), quoting *Thomas*, 604 F.3d at 455 ("in certain instances, a constitutional violation [can] solely be tied to an unconstitutional municipal policy if it [can] be shown that the public entity's 'policies caused the harm, even if the officer was not individually culpable.'"); *Terry v. Cook County Dep't of Corr.,* No. 09 C 3093, 2010 WL 2720754, at *3 (N.D. Ill. July 8, 2010) (same).

    **B. The Defendants mistakenly rely on inapplicable case law relating to a single incident not a 15 year pattern and practice of harm.**

The Defendants attempt to further muddy the issues in this case by arguing that *Brown v. Patterson* 823 F.2d 167 (7th Cir. 1987), defeats Plaintiff's claims. But *Brown* is inapplicable here. *Brown* focused on a single, solitary arrest and criminal prosecution endured by the Plaintiff. Like here, the Plaintiff in *Brown* was arrested and detained because of mistaken identity. But that is where the similarities end. The Plaintiff in *Brown* faced the consequences of mistaken identity on one occasion. The City there could not be held liable "for an isolated slip-up." *Brown*, 823 F.2d 167, 169. In the instant case, CPD officers arrested Mr. Cole over 60 times. Multiple CPD supervisors were aware that Mr. Cole was repeatedly targeted by the CPD for stops and detention—yet they did nothing to protect his rights. The complaint alleges that on 60 occasions, CPD officers produced various forms of


paperwork documenting that Mr. Cole was a victim of a mistaken identity—supervisors reviewed each of these documents but failed to put in place the protections that would have ended Mr. Cole's 15-year ordeal of police harassment and detention. See Dkt 1 ¶¶ 33 & 34. CPD officials knew that—unless they took the actions recently taken after this Court scheduled an emergency evidentiary hearing—Mr. Cole would remain with a target on his back and CPD officers would continue to unlawfully stop, detain and arrest him. Dkt 1,¶¶ 35.

Additionally, the Complaint includes detailed allegations regarding the ways that CPD's well-documented data failures caused violations of Mr. Cole's Fourth Amendment Rights. Specifically, the complaint alleges that both the U.S. Department of Justice and the Police Accountability Task Force concluded that CPD's information management systems "contribute to [CPD's] failure to identify and correct unconstitutional policing" and that information is "inaccurate and incomplete." Dkt 1, ¶ 37. The *Brown* Plaintiff made no such allegations. Had such allegations been made, the Seventh Circuit would clearly have allowed Mr. Brown to pursue his claims. See *Brown*, 823 F.2d 167, 169 ("there is no suggestion that the City of Harvey has a custom or policy of doing these things").

Because of the isolated nature of Mr. Brown's plight, the Seventh Circuit concluded that he had no federal claim. But the Court was deeply sympathetic to Mr. Brown's situation, writing that

> We think there should be financial compensation for a person forced through no fault of his own to undergo the indignity of a false arrest and. . .to carry on his person at all times proof that he is not [subject to a warrant]. At the very least we think that Brown should be reimbursed for whatever out-of-pocket expenses he incurred to raise bail and in missing work (if he did miss work). One might have thought that the institutional defendants would offer such compensation simply as a gesture of decency (maybe this opinion will induce them to do so); or in a prudent effort to forestall a suit costly to defend, by assuaging Brown's natural feeling of indignation at being arrested and charged for another man's crimes. Decency and institutional self-interest sometimes coincide.

*Brown*, 823 F.2d 167, 170.

Here, as a result of the violations of Mr. Cole's Fourth Amendment rights resulting from the City's inactions and indifference to his situation, but he has suffered significant harm—including

loss of employment, adversity within his personal relationships and the ongoing trauma of police abuse and harassment. Yet, despite the Seventh Circuit's admonition in *Brown*, decency and institutional self-interest remain unaligned within the CPD. The City continues to victimize Mr. Cole by attempting to deny him relief the Seventh Circuit clearly suggests he is due. But the City cannot rely on *Brown* to do so. In *Brown*, the Seventh Circuit barred the claims of a Plaintiff who suffered a single incident of false arrest and detention resulting from a mistaken identity. This case is simply no barrier to Mr. Cole's claims regarding a 15-year long pattern and practice. Mr. Cole's complaint should therefore proceed.

### C. Plaintiff has sufficiently plead a *Monell* Claim for Violations of the Fourth Amendment

The Defendant makes much of the fact that on the 60+ occasions that CPD officers stopped Mr. Cole, detained and arrested him (and frequently used force against him), they did not ultimately charge him or book him on the wrong warrant. In the Defendant's telling, the fact that CPD officers eventually let Mr. Cole go (sometimes after many hours, and many bruises) means that no unlawful policy or practice exists. Essentially, the Defendant seems to argue that because Mr. Cole wasn't detained for days or charged with a crime, the system worked as it should. This is not the law. To be sure, CPD officers could have harmed Mr. Cole in worse ways. He could have been detained for days. The unthinkable could have happened—on one occasion CPD officers detained Mr. Cole at gunpoint. Dkt 1, ¶ 38. But the Constitution doesn't require that Plaintiffs suffer the worst harm imaginable in order to recover.

The Fourth Amendment protects people against unlawful stops, detentions and arrests. *See Terry v. Ohio,* 392 U.S. 1, 5 (1968)(Only in "appropriate circumstances and in an appropriate manner" may a police officer "approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest."); *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 762 (7th Cir. 2008)("An unlawful arrest occurs when a person is seized by police without probable

cause. Whether a person has been seized is determined by considering whether a reasonable person, innocent of any crime, would have concluded that he was not free to leave police custody.") As soon as CPD officials knew that Mr. Cole was subject to unlawful stops and detentions because of mistaken identity, CPD had an obligation to protect his constitutional rights. Further, the City has long been on notice regarding the constitutional violations that arise from the CPD's shoddy record keeping. These failures gave rise to Mr. Cole's *Monell* claims.

To establish municipal liability, a plaintiff must show that he "(1) suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policymaking authority . . . . which (3) was the proximate cause of his injury." *King v. Kramer*, 763 F.3d 635, 649 (7th Cir. 2014). Mr. Cole suffered repeated deprivations of his Fourth Amendment right to be free from unlawful seizures as a direct result of CPD's widespread custom of failing to maintain an accurate and effective information management system.

The CPD's failure to rectify its ongoing violations of Mr. Cole's Fourth Amendment rights has resulted in part from the CPD's widespread policy, practice, and custom of failing to maintain an accurate information management database. A plaintiff can "demonstrate the existence of a municipal policy or custom by establishing: (1) an express policy that . . . causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the final force of law; or (3) that the constitutional inquiry was caused by a person with final policymaking authority." *Pesek v. Marzullo*, 566 F. Supp. 2d 834 (N.D. Ill. 2008). Despite clear and repeated notice of deficiencies in its record-keeping practices in the form of reports from large-scale investigations,[2]

---

[2] *See* DOJ Report, *supra* note 1; PATF Report, *supra* note 2; OIG Report, *supra* note 3.

the CPD has failed to take any steps to ensure that the constitutional rights of Chicago residents like Mr. Cole are not violated due to its deficient information management systems.

A widespread custom can be demonstrated "by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officers." *Jackson v. Marion County,* 66 F.3d 151, 152 (7th Cir.1995). The CPD has engaged in such a series of bad acts by falsely stopping, detaining and arresting Mr. Cole numerous times and taking no remedial steps to ensure that such detentions no longer occur. Where a municipality has "actual or constructive knowledge that its agents will probably violate constitutional rights, it may not adopt a policy of inaction." *King v. Kramer*, 680 F.3d 1013, 1021 (7th Cir. 2012) (quotations omitted); *see also Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 966 (7th Cir. 2019) ("a 'policy' can take the form of a hands-off approach or a policy to do nothing"); *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017) ("this court has recognized these principles for years" (citing *Sims v. Mulcahey*, 902 F.2d 524 (7th Cir. 1990), *Avery v. Cty. of Burke*, 660 F.2d 111, 114 (7th Cir. 1981), *Murray v. City of Chicago*, 634 F.2d 365, 366–67 (7th Cir. 1980))).

The CPD has been on notice since 2006 that Mr. Cole has been repeatedly falsely detained for a warrant of which he is not the subject. Mr. Cole has himself brought this issue to the CPD's attention many times. The letter from Sergeant Osborn shows that the CPD is on notice, and his handwritten note is nothing more than a feeble, half-hearted attempt to remedy the situation when a more meaningful intervention was and is necessary. See Dkt. 1,¶ 16.

In addition to the incidents specific to Mr. Cole, the CPD has been on notice for years that its information management systems are flawed and create unconstitutional violations. Investigations by the Department of Justice and the Police Accountability Task Force revealed deficiencies in the CPD's information management systems. The DOJ Report flatly states that, because of the siloed,

disconnected, and incomplete nature of the data maintained by the CPD, "personnel within CPD often lack access to the data that would help them perform their duties."[3] The PATF Report similarly found that the "limited functionality" of the CPD's information management systems limits their effectiveness.[4] The OIG Report as well raised concerns as to the quality of CPD's of data management and recordkeeping.[5] *See* Dkt. 1¶ 37(a-c) for allegations related to these investigations and reports. These reports show that the CPD has been on notice that its information management systems are deficient and has failed to take any meaningful actions to ensure that information contained in CLEAR and other databases is accurate—even when specifically called to do so, as in Mr. Cole's case. Multiple courts have found that the findings in the PATF and DOJ reports are sufficient to carry Plaintiff's *Monell* burden at the Motion to Dismiss stage. See *Arrington v. City of Chicago*, 17 C 5345, 2018 WL 620036, at *3 (N.D. Ill. Jan. 30, 2018)("The DOJ report is "more than sufficient to plausibly infer that the City has a custom or practice" of unlawful police conduct, and that the City was on notice of this custom or practice during the relevant time period. . . the DOJ Report citing evidence that such a custom or practice does in fact exist is a sufficient basis for Plaintiff's *Monell* claim to proceed."); *Shields v. City of Chicago*, 17 C 6689, 2018 WL 1138553, at *4 (N.D. Ill. Mar. 2, 2018)("Plaintiff alleges that the PATF and DOJ Report highlight the deficiencies in relation to the CPD's [policies and practices] that are sufficiently similar to Plaintiff's. . .—raising a reasonable inference that he is not alone in suffering constitutional injuries resulting from this alleged practice or custom."); *Archie v. City of Chicago*, 19 CV 4838, 2020 WL 5751185, at *1 (N.D. Ill. Sept. 25, 2020)(same).

---

[3] DOJ Report, supra note 1 at 125.

[4] PATF Report, supra note 2 at 80.

[5] OIG Report, supra note 3 at 48.

The "critical question" in *Monell* is whether "the action about which the plaintiff is complaining [is] one of the institution itself, or is it merely one undertaken by a subordinate actor?" *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017). CPD's repeated unconstitutional detentions of Mr. Cole, despite clear notice both specific to Mr. Cole and broadly related to its inadequate information management systems, demonstrates that the violations of Mr. Cole's Fourth Amendment rights are an action not just of the individual officers, but of CPD as an institution. "[I]n situations where rules or regulations are required to remedy a potentially dangerous practice, [a public entity's] failure to make a policy is also actionable.") *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293 (7th Cir. 2010). "Faced with actual or constructive knowledge that its agents will probably violate constitutional rights, [a] city may not adopt a policy of inaction." *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017) (internal citations omitted); see also *King*, 680 F.3d at 1021 (same).

To establish causation, a plaintiff must show that "municipal action was the moving force behind the constitutional injury." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 598 (7th Cir. 2019). This requires demonstrating a "direct causal link" between the municipal action and the constitutional injury. *Id.* at 599. Here the connection is obvious. If CPD had maintained an accurate information management system, Mr. Cole would have been released from the traffic stops at issue within minutes. Instead, because CPD's system presented the officers with incomplete information related to Mr. Cole, those stops turned into sometimes violent detentions that lasted hours and deprived Mr. Cole of his Fourth Amendment rights. There is thus a direct causal link between CPD's faulty information system and the violations of Mr. Cole's Fourth Amendment Rights.

### III. DEFENDANT'S MOTION IMPOSES A HIGHER PLEADING STANDARD THAN IS REQUIRED AT THIS STAGE.

Finally, the Defendant's Motion must be denied because it consistently makes arguments more appropriate for summary judgement and goes so far as to allege additional facts not pled in Plaintiff's complaint. For example, the Defendant asserts that upon stopping Mr. Cole, CPD officers conducted an "investigation" and further makes assertions regarding the kinds of information the CPD officers have available during each stop. The City also adds facts about a statewide document management system that is not mentioned in the Plaintiff's complaint. See Dkt. 15 at 1-2; 4, 6, 8, 10. The introduction of facts to bolster the Defendant's Motion to Dismiss contradicts the law and ignores the procedural posture of this case. At this stage, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. See *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081.

Further, the Supreme Court and Seventh Circuit have reminded repeatedly that "[a] plaintiff's complaint in a § 1983 municipal liability claim need not meet any heightened pleading standard, but rather must simply set forth sufficient allegations to place the court and defendants on notice of the gravamen of the complaint." *Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2001); see also *Leatherman v. Tarrant County*, 507 U.S. 163 (1993); *McCauley v. City of Chicago*, 671 F.3d 611 (7th Cir. 2011). For purposes of analysis under Rule 12(b)(6), "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004) (quoting *Scheurer v. Rhodes*, 416 U.S. 232, 236 (1974)). The Plaintiff has clearly sufficiently pled Fourth Amendment *Monell* allegations related to CPD's inactions in the face of knowledge about Mr. Cole's mistaken identity and the well-documented failures of CPD to maintain data systems that would prevent the pervasive rights violations alleged by Mr. Cole. The City therefore remains liable for Mr. Cole's claim.

**CONCLUSION**

For the foregoing reasons, the Plaintiff respectfully requests that this Court deny the City Defendant's Motion to Dismiss.

                    Respectfully submitted,

                    Sheila A. Bedi
                    *One of Plaintiff's Attorneys*

Sheila A. Bedi
Community Justice Civil Rights Clinic
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611
(312) 503-2492
sheila.bedi@law.northwestern.edu

Daniel Massoglia
First Defense Legal Aid
601 S. California Ave.
Chicago, IL 60612
708-797-3066
daniel@first-defense.org