IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DARREN COLE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 21cv1640 |
| | ) | |
| The CITY OF CHICAGO, | ) | |
| Defendant. | ) | |

**DEFENDANT CITY OF CHICAGO'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

NOW COMES Defendant, City of Chicago (Defendant City), by and through its attorney, Celia Meza, Corporation Counsel for the City of Chicago, and, in support of its Motion to Dismiss Plaintiff's Complaint, states as follows:

## INTRODUCTION

Plaintiff unfortunately found himself in an incredibly unique and understandably frustrating situation. Plaintiff alleges that he was subject to numerous seizures over fourteen to fifteen years. The seizures relate to a warrant out of Marion County, Illinois, that lists the wanted subject as having the same name, date of birth, and nearly identical driver's license number as Plaintiff. Defendant City neither sought the issuance of the warrant nor its entry into the state-wide LEADS system. Due to the extreme similarities between Plaintiff and the wanted subject, Chicago Police officers conducted necessary investigations into Plaintiff after the complained of stops. Plaintiff was always released and never charged or prosecuted after these investigations.

## ARGUMENT

Plaintiff's Complaint should be dismissed as Plaintiff has alleged events outside the applicable statute of limitations, failed to allege a Constitutional violation, and has failed to properly allege a *Monell* claim.

### I. Plaintiff's Complaint Fails at the Outset Because Many of the Alleged Incidents are Outside the Statute of Limitations and Because He Has Not Alleged an Underlying Constitutional Violation

The vast majority of Plaintiff's alleged seizures occurred prior to March 25, 2019, and are outside the statute of limitations. As such, all the incidents outside the statute of limitations cannot be the basis of Plaintiff's alleged Constitutional violation. The few incidents Plaintiff has pleaded within the statute of limitations fail to allege a Constitutional injury, as each alleged seizure is reasonable based on Plaintiff's Complaint. Plaintiff's response argues that no officers need to be found liable in order for the *Monell* claim to proceed. Doc. No. 20 at 5-7. Defendant City agrees with this proposition. However, *Monell* liability can only be triggered when a Constitutional violation occurs, regardless of whether or not an officer is named or found liable. *See First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978, 993 (7th Cir. 2021). Here, there are no Constitutional violations. Settled case law makes clear that each stop and seizure of Plaintiff, while frustrating and unfortunate, was Constitutional on its face.

#### a. All Instances Prior to March 25, 2019, Should Be Disregarded Because They Are Beyond the Statute of Limitations

Plaintiff argues that because each alleged detention in his Complaint resulted from the same alleged policy of Defendant City, that that statute of limitations for his claims did not start until the last of his detentions. Plaintiff's argument would allow separate and distinct events, all allegedly carried out under the same policy, to rope together detentions that are separated by days, weeks, months, and even years.

The Seventh Circuit has applied the continuing violation doctrine (1) when a plaintiff could not reasonably be expected to perceive that the alleged wrongdoing before the expiration of the statute of limitations, (2) when the violation only became apparent in light of later events, and (3) when a state actor has a policy that brings a fresh violation each day. *Savory v. Lyons*, 469 F.3d

667, 672 (7th Cir. 2006). As Plaintiff has not indicated that he was unable to perceive his prior detentions, the first scenario mentioned by the *Savory* court is inapplicable. Likewise, as Plaintiff has pleaded that he knew that the stops were purportedly unconstitutional and has for years tried to remedy it, shows the alleged unconstitutional conduct did not only become apparent on Plaintiff's December 2020 detention, making the second scenario outlined by *Savory* inapplicable. *See* ECF No. 1 at 7.

As with the other two scenarios outlined in *Savory*, the "fresh violation" scenario is also inappropriate here. *Schrader v. Ferjack* is instructive on the continuing violation doctrine in situations like the instant matter. *See Schrader v. Ferjack*, 02 C 472, 2002 WL 1067699, at *3 (N.D. Ill. May 28, 2002). In *Schrader*, the plaintiff alleged that police officers stopped and ticketed him for similar vehicle violations on multiple occasions, beginning in January of 1999. *Id*. at *1. The plaintiff filed suit in January of 2002. *Id*. at *2. The defendants moved to dismiss any alleged violations occurring prior to January 2000 based on the statute of limitations. *Id*. at *3. The *Schrader* court held that each stop involved a separate claimed Constitutional violation, not a continuing one. *Id*. The court continued by stating that the plaintiff's apparent knowledge of the alleged violation throughout the years of their occurrence made his argument that it was a continuing violation unavailing. *Id*.

Here, like in *Schrader*, Plaintiff has alleged multiple stops over a span of years. ECF No. 1 at 1. Similar to the *Schrader's* plaintiff's knowledge of the alleged misconduct prior to the expiration of the statute of limitations, here Plaintiff alleges that he has taken action to correct the alleged violations, including retaining a law firm in 2014. ECF No. 1 at 7-8. Here, like the *Schrader's* court, this Honorable Court should hold that each of the alleged detentions are a discrete act and

are therefore not subject to the continuing violation doctrine and dismiss and/or strike any allegations or references to alleged acts that occurred prior to March 25th, 2019.

### b. Plaintiff Fails to Plead a Constitutional Violation Because His Complaint Alleges Seizures that are Reasonable

It is well settled in this Circuit that in order for a seizure to be unlawful, it must be unreasonable. *See Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987)(holding that an arrest of a citizen whose name, race, and year of birth corresponded with that of a person with an outstanding warrant, even after credible protestation, was reasonable) and *Brown v. Patterson*, 823 F.2d 167, 169 (7th Cir. 1987)(holding that an arrest of a citizen whose name matched that of an alias of a wanted subject, was the same race and gender, lived in the same area, and had a birthdate twelve days apart from the subject was reasonable).

*Jackson v. Adams* is instructive on whether multiple arrests of the wrong person based on a warrant can be reasonable. *See Jackson v. Adams,* 88 C 2819, 1989 WL 6492, at *2 (N.D. Ill. Jan. 24, 1989). In *Jackson*, a warrant was issued for "Sherry Jackson." *Id*. at 1. The plaintiff, Sharon Jackson, was stopped by a police officer, who ran her name in the LEADS system. *Id*. After running the plaintiff's name, the outstanding warrant for "Sherry Jackson" appeared. *Id*. The warrant noted to fingerprint any suspects, as two wrong individuals have been arrested under it. *Id*. Indeed, the plaintiff herself had been previously arrested under the warrant, six months prior. *Id*. In the previous arrest, the plaintiff was not only arrested, but brought before the court. *Id*. At the hearing, the plaintiff established she was not the wanted "Sherry Jackson" and the court re-issued the warrant. *Id*. The charges were later dropped, and the plaintiff's public defender sent her a letter informing her of the dropped charges. *Id*.

4

During her subsequent arrest, the *Jackson* plaintiff informed the arresting agency that she was not the right "Sherry Jackson," that she was previously mistaken for the wanted subject, and showed the agency the letter she received from her public defender. *Id*. The police officers however neither believed the plaintiff nor checked her fingerprints. *Id*. Instead, the officers sent the plaintiff to the county sheriff, where the plaintiff spent the night in jail. *Id*. The following day, the court, realizing this was the wrong "Sherry Jackson" immediately ordered the plaintiff released and charges dropped. *Id*. The plaintiff then brough suit against the arresting officer and the City of Harvey for unreasonable seizure. *Id*.

The *Jackson* court applied the *Patton* and *Brown* reasonableness tests to determine if there was a Constitutional violation. *Id*. at 2. The court determined that even though the officer refused to fingerprint the plaintiff, the seizure was reasonable and dismissed the claim. *Id*. at 3.

The instant matter is analogous to *Jackson*. Similar to the multiple individuals, including the plaintiff, that had been mistakenly arrested in *Jackson*, here Plaintiff alleges that he was wrongfully arrested numerous times over the warrant's fifteen-year life. ECF No. 1 at 8. Like the name of the wanted subject and plaintiff being similar in *Jackson*, here the warrant's subject had the same name and date of birth, as well as a nearly identical driver's license number, as Plaintiff. *Id*. at 7. Like the *Jackson* plaintiff protesting innocence and showing documents, here Plaintiff alleges that he informed officers of the mistake and showed letters from Marion County and a Chicago Police Department (CPD) sergeant. *Id*. at 8. Like the over-night detentions in *Jackson*, here Plaintiff was held for a period of hours, but not overnight. *Id*. at 3-4.

While *Jackson*'s core facts are similar to the instant matter, there are dissimilar aspects. Unlike the over-night holds, transfers to the sheriff's office, and being brought before a court on charges, here Plaintiff was released every time without charges, after successful and diligent

5

inquiry. *See generally* ECF No. 1. Unlike a simple name match in *Jackson*, here the warrant matched Plaintiff's name and date of birth, with a near match to his driver's license number. Unlike the officer's refusal to fingerprint the plaintiff in *Jackson*, here CPD officers conducted thorough and successful investigations, leading to Plaintiff's release each time. *Id*. at 9.

As the *Jackson* court held that the plaintiff's seizure was reasonable even taking into consideration the lack of investigation, lengthy detentions, and charging, this Honorable Court should find that Plaintiff's seizures likewise reasonable as in each circumstance CPD officers seized based on probable cause and eventually released Plaintiff.

As shown above, each of Plaintiff's seizures were reasonable and, as such, do not violate the Fourth Amendment. *See Patton*, 822 F.2d at 700. As the seizure did not violate the Fourth Amendment, there is no Constitutional injury to Plaintiff. As there was no Constitutional violation or injury, Plaintiff cannot succeed on his *Monell* claim.

In order to succeed on a *Monell* claim, Plaintiff must, among other things discussed more thoroughly in Defendant City's Motion to Dismiss, show the Defendant City's alleged policy or practice was the direct cause or moving force behind the Constitutional violation. *See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 820 (1985). As the seizures were reasonable based on the active warrant, Plaintiff cannot show that a policy or custom of Defendant City was the cause of Plaintiff's Constitutional violation because there was no Constitutional violation.

II. **Plaintiff Has Not Sufficiently Alleged a Policy of Defendant City that is the Moving Force Behind the Alleged Injuries**

   a. **Plaintiff Has Failed to Allege a Widespread Policy**

As explained in Defendant City's Motion to Dismiss, Plaintiff has the burden of pleading a widespread policy of Defendant City that results in the wrongful arrests of individuals. Plaintiff

has not done so.  Instead, Plaintiff cites solely to his own circumstances, which common sense dictates are extremely unique and not widespread.

As detailed in Defendant City's Motion to Dismiss, Plaintiff's alleged seizures in 2019 amounted to less than 0.015% of arrests on warrants by the CPD or about 0.0022% of all arrests in 2019.  *See* Doc. 15 at 10.  Plaintiff's Complaint merely explains his own experiences dealing with a warrant containing his exact name and date of birth and a nearly identical driver's license number.  As such, Plaintiff has failed to allege facts sufficient for this Honorable Court to infer the widespread practices in Plaintiff's Complaint exist and Plaintiff's Complaint should be dismissed.

### b. Plaintiff Fails to Allege How Defendant City's CLEAR System Caused Plaintiff's Alleged Injury

Plaintiff's Complaint and response to Defendants City's Motion to Dismiss is replete with references to CPD's CLEAR system[1].  *See generally* ECF No.1 and No. 20.  In fact, the CLEAR system is the crux of Plaintiff's *Monell* claim.  *Id*. at 45.  However, CLEAR is not what caused Plaintiff's alleged seizures, as shown by his Complaint.  Throughout his Complaint, Plaintiff makes no allegation that CPD officers, while conducting the alleged seizures, utilized the CLEAR system.  *See generally* ECF No. 1.  Plaintiff does not allege that CPD officers used the CLEAR system prior to stopping him.  *Id*.  Plaintiff does not allege that the CPD officers' use of CLEAR prolonged his detention.  *Id*.  Instead, Plaintiff admits that he was arrested based on a Marion County, Illinois *warrant*.  *Id*. at 2, 8 (emphasis added).  As such, as Plaintiff's Complaint makes clear, the intrastate warrant record keeping system is the catalyst, not CLEAR.

---

[1] In Plaintiff's response to Defendant City's Motion to Dismiss, Plaintiff references various reports, such as the Police Accountability Task Force and Department of Justice reports, but fails to apply any specific portion of those reports to the alleged policy that is the moving force behind a citizen being arrested on a warrant bearing the same name, date of birth, and nearly identical driver's license number of the arrestee.

Therefore, the system that is relevant to Plaintiff's Complaint is the Illinois State Police's (ISP) LEADS system[2]. *See generally* 20 Ill. Reg. 1240[3]. LEADS is a computerized statewide system designed to provide services, information, and capabilities to law enforcement agencies throughout Illinois. 20 Ill. Reg. 1240.10. The LEADS system is operated by the ISP. *Id*. LEADS records include warrants, which must be immediately entered into LEADS by the "responsible agency" within twenty-four hours. 20 Ill. Reg. 1240.60. The agency that entered a record into LEADS is responsible for the accuracy of that record. *Id*.

Based on the foregoing, Plaintiff's repeated allegations against the CLEAR system are misplaced and irrelevant, as it is the LEADS system, which is not controlled by Defendant City, that Illinois law enforcement agencies utilized for intrastate warrants.

### III. Defendant Is Not Arguing for a Heightened Pleading Standard

Plaintiff accuses Defendant City of arguing that this Honorable Court should impose a heightened pleading standing on Plaintiff's *Monell* claim. That is simply not the case. Plaintiff has the burden of pleading facts sufficient to allow this Honorable Court to infer that the alleged widespread practices exist. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Further, Plaintiff is required to allege facts necessary for this Honorable Court to infer that the alleged practices are so well settled as to carry the force of law. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). As such, Defendant City is not holding Plaintiff to a heightened pleading standard. Instead, Plaintiff is being held to the standard of *Monell*, a complex theory of liability that requires

---

[2] A district court may take judicial notice of matters of public records. *Anderson v. Simon,* 217 F.3d 472, 475 (7th Cir. 2000*)*
[3] The Law Enforcement Agencies Data System (LEADS), 20 Ill. Reg. 1240, is publicly available at: https://www.ilga.gov/commission/jcar/admincode/020/02001240sections.html

more factual specificity depending on the complexity of a plaintiff's claim. *See McCauley*, 671 F.3d at 616-617.

It is true that not all *Monell* theories of liability require a plaintiff to plead instances outside his own experiences. *See White v. City of Chicago,* 829 F.3d 837, 844 (7th Cir. 2016)(holding that the use of pre-printed warrant application forms did not require alleging multiple individuals arrested pursuant to the alleged policy, but that the error was harmless as **probable cause** established the plaintiff **did not suffer a Constitutional injury**, which is a **necessary element of a *Monell* claim**)(emphasis added). However, context matters in deciding whether a plaintiff must allege instances outside his own experiences. Here, unlike the standard pre-printed form used in *White*, Plaintiff's allegations surround seizures made in accordance with a warrant naming a wanted person with Plaintiff's same name, date of birth, and nearly identical driver's license number. ECF No. 1 at 7. Alleging that Defendant City has a widespread practice that leads to the wrongful arrest of individuals with the same names, dates of birth, and nearly identical drivers' license numbers, requires Plaintiff to allege instances outside of his own experiences. He has not.

As Plaintiff has failed to provide this Honorable Court with enough facts to allow it to infer that the alleged widespread custom or practice exists, Plaintiff's Complaint should be dismissed.

## CONCLUSION

Plaintiff attempts to hold Defendant City liable for arrests stemming from a warrant issued by a court in another jurisdiction. Each of the alleged seizures relate to a warrant issued for a subject with the same name, date of birth, and nearly identical driver's license number. Each of the seizures that Plaintiff states in his Complaint are supported by probable cause, were reasonable under the circumstances, and, as such, did not violate the Fourth Amendment.

As there is no Constitutional injury resulting from these seizures, Defendant City asks this Honorable Court to grant its motion and dismiss Plaintiff's Complaint.

**Dated: July 23, 2021**          Respectfully submitted,

                                           CELIA MEZA
                                           Corporation Counsel, City of Chicago

                              By:     */s/ Nicholas T. Peluso*
                                                   Nicholas T. Peluso
                                                   Assistant Corporation Counsel

Bret Kabacinski, Assistant Corporation Counsel Supervisor
Nicholas Peluso, Assistant Corporation Counsel
Danielle Alvarez, Assistant Corporation Counsel
City of Chicago Department of Law
Federal Civil Rights Litigation Division
2 North LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 742-6404
Attorney No. 6324478
Nicholas.Peluso@cityofchicago.org

**CERTIFICATE OF SERVICE**

Please take notice that on July 23, 2021, I, Nicholas T. Peluso, caused the foregoing document, **DEFENDANT CITY OF CHICAGO'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**, to be served upon all counsel of record through the Court's electronic filing and docketing system.

/s/ *Nicholas T. Peluso*
Bret A. Kabacinski, Assistant Corporation Counsel Supervisor
Nicholas Peluso, Assistant Corporation Counsel
Danielle Alvarez, Assistant Corporation Counsel
City of Chicago - Department of Law
Federal Civil Rights Litigation Division
2 North LaSalle, Suite 420
Chicago, IL 60602
(312) 742-6404
Nicholas.Peluso@CityofChicago.org
ARDC: 6324478
*Counsel for Defendant City of Chicago*